JENSEN *v.* JENSEN.

DIVORCE—EXTREME CRUELTY—EVIDENCE.

> Husband *held,* not entitled to divorce from wife on ground of
> extreme and repeated cruelty under testimony tending to prove
> she had assumed an attitude of coldness towards him and
> members of his family, was disagreeable and pouty in the home,
> lost her temper and threw things around and refused to have
> marital relations with him during a recent portion of the period
> during which they lived together, where record also indicates
> her conduct was provoked in part by plaintiff's consumption
> of intoxicating liquor and her own ill-health following a mis-
> carriage after which her doctor had advised that she not become
> pregnant again.

Appeal from Montcalm; Hawley (Royal A.), J.
Submitted January 12, 1940. (Docket No. 139, Cal-
endar No. 40,990.) Decided March 15, 1940.

Bill by Oscar P. Jensen against Nellie Mae Jen-
sen for an absolute divorce on ground of extreme
cruelty. Bill dismissed. Plaintiff appeals. Af-
firmed.

*Brake & Miel,* for plaintiff.

*Frank A. Miller,* for defendant.

NORTH, J. Plaintiff filed a bill for divorce charg-
ing his wife with extreme and repeated cruelty.
After the case was at issue on the wife's answer and
plaintiff's reply thereto, testimony in behalf of the
parties was taken in open court. The circuit judge
dismissed plaintiff's bill of complaint and he has
appealed.

As to extreme cruelty on the part of the wife, plaintiff alleged and offered testimony tending to prove that she assumed an attitude of coldness towards him and members of his family, and he charged her with being "disagreeable and pouty" in the home, and that she would "lose her temper and throw things around." Plaintiff also charges, and defendant admits, that she refused to have marital relations with plaintiff during a recent portion of the period during which they lived together.

Review of the record indicates that there has been very much of an attempt on the part of plaintiff to make mountains out of molehills insofar as defendant is charged with assuming a wrong attitude toward him or his relatives or in being guilty of a display of ill temper. Defendant was not wholly without some provocation or excuse for her shortcomings both by reason of the conduct of the plaintiff and by reason of her own afflictions. Plaintiff testified: "I did find some fault with her;" and further, "I have drunk some beer in the last two or three years, but I did not bring any to my home, nor did I have any in my house. My wife objected to having it in the house." And he testified: "I wanted her to go out to dances, but she never attended any dances with me, at least not for a long time." The wife, who is 38 years of age, testified, and in this she is abundantly corroborated, that her health was poor both before and after a miscarriage which she suffered in the fifth month of pregnancy (May 22, 1938) and that she had not yet fully recovered; also that she did not have an interest in card playing or dancing, although prior to the time she was afflicted with ill health she did attend community dances and other neighborhood gatherings with her husband. The record tends to sustain her testimony wherein she stated: "For the last three years I think there has been a little too much whisky

in our home for one thing." Plaintiff, in explanation of his being arrested by a deputy sheriff following an automobile accident in which his wife was rather seriously injured, testified:

"Q. A deputy sheriff took you in charge there and took you over to his office?
"A. Yes.
"Q. He said you were drunk and that was what caused the accident?
"A. No, I don't think I was drunk.
"Q. Had you been drinking?
"A. I had been drinking."

On this occasion plaintiff seems to have been released from custody in consequence of the solicitations of defendant. Although he was subsequently on the witness stand, plaintiff did not deny defendant's testimony that at least on one occasion he struck her several times.

Defendant's attitude toward her husband is to some extent indicated by her testimony in which she stated: "I don't believe I have felt unfriendly toward Oscar. I visit with him nearly every day and talk to him. I don't carry on very much of a conversation." These parties were married in 1928 and have a daughter who at the time of the filing of the bill of complaint (May 5, 1939) was 8 years of age. The child has remained in the custody of defendant and plaintiff testified: "I have no complaint to make on the way she is taking care of the child." Defendant's attitude in the home must be viewed in the light of the testimony hereinafter noted, which indicates that both mentally and physically she has been rather seriously afflicted during the period in which plaintiff attempts to charge her with shortcomings.

In explanation of defendant's refusal of marital relations since her pregnancy in December, 1937,

the record contains the following testimony given by defendant:

"My child was born in 1931 and the condition of my health for sometime was rather weak and nervous, but I was getting along. My health was poor both before and after the birth of the last child (May 22, 1938) that was premature and I would say that I have not fully recovered. * * *

"As to the reason I didn't want to have any marital relationship with Mr. Jensen, I was very sick and very weak and menstruating most of the time (during last pregnancy). I was weak and nervous and sick and then I had an automobile accident in December, 1938."

Doctor I. S. Lilly was defendant's attending physician. He testified:

"She has suffered from mental depression for years. It came after the birth of her first child. I presume that was the cause of it, and that is the reason I advised her (after her miscarriage in May, 1938) not to become pregnant again.

"From what I know of her case she is improving mentally and physically. * * *

"In my opinion the birth of the first child injured her mentally because she was all right before that."

It is unnecessary to review further details of the record. We are fully satisfied that the trial court properly disposed of the case. The decree entered in the circuit court is affirmed, with costs to appellee.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, MCALLISTER, WIEST, and BUTZEL, JJ., concurred.